**DISMISS; and Opinion Filed August 14, 2013.**



# In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01016-CV

### VSR FINANCIAL SERVICES, INC., CHAPMAN HEXT & CO., P.C., GREGORY W. HEXT, CH WEALTH MANAGMENT, LLC, WHITE ROCK ADVISORS, LLC, AND CHARLES E. CHAPMAN, Appellants

### V.

### GORDON B. MCLENDON, JR., AND TRI-STATE THEATRES, Appellees

**On Appeal from the 95th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 12-01326**

## OPINION
Before Justices O'Neill, Francis, and Fillmore
Opinion by Justice Fillmore

Appellant VSR Financial Services, Inc. (VSR), and appellants Chapman Hext & Co., P.C. (Chapman Hext), Gregory W. Hext (Gregory Hext), CH Wealth Management, LLC (CHWM), White Rock Advisors, LLC (White Rock Advisors),[1] and Charles E. Chapman (Charles Chapman) (collectively referred to as the Chapman appellants) brought their interlocutory appeals of the trial court's denials of their motions to compel arbitration of the claims of Gordon B. McLendon, Jr. (McLendon) and Tri-State Theatres (Tri-State) (collectively

---

[1] Appellant White Rock Advisors filed a motion to dismiss it from this appeal on the basis that appellees Gordon B. McLendon, Jr. and Tri-State Theatres nonsuited their claims against White Rock Advisors. Appellees did not respond to that motion. By separate order issued in conjunction with this opinion, we granted White Rock Advisors's motion to dismiss its appeal, and we dismissed White Rock Advisors's appeal.

referred to as appellees). In two issues, VSR contends the trial court erred by (1) failing to compel arbitration of appellees' claims because a valid agreement to arbitrate the claims existed between appellees and VSR and VSR's "representative," Charles Chapman, and (2) striking portions of Charles Chapman's affidavit. In three issues, the Chapman appellants contend (1) the trial court erred by failing to compel arbitration of appellees' claims that arise from agreements containing an arbitration provision; (2) because appellees rely on agreements containing an arbitration provision in asserting their claims against non-signatories, the trial court erred by failing to compel appellees to arbitrate their claims against the non-signatories; and (3) because appellees raise allegations of "substantially interdependent and concerted misconduct" by both non-signatories and one or more of the signatories to agreements containing an arbitration provision, the trial court erred by failing to compel appellees to arbitrate their claims against the non-signatories. We affirm the trial court's order denying the motions to compel arbitration.

## Background

Appellees sued VSR and the Chapman appellants as a result of an investment loss sustained by appellees. According to appellees' live pleading, the Chapman appellants provided them accounting services and investment advice prior to and during calendar years 2006 and 2007. The investment advice provided by the Chapman appellants included direction on how, where, and to what extent money should be invested by various McLendon business ventures. Appellees allege that the Chapman appellants "recommended and caused [appellees] to purchase notes from DBSI, through what was called DBSI 2006 Secured Notes Corporation." Appellees also claim that the Chapman appellants, acting as appellees' agent, chose VSR, a registered broker-dealer, to make investments, including the DBSI investment, on behalf of the appellees.

In December 2006, McLendon sought to open an individual investment brokerage account with VSR by signing a "VSR New Account Form." The VSR New Account Form,

which was tailored to "individual and joint accounts," was also signed by Charles Chapman, in the capacity of a "Registered Rep," and by an unidentified "Principal." The VSR New Account Form required that McLendon provide client profile and risk tolerance information, but does not contain the terms and conditions of any services to be provided by VSR and does not contain an arbitration provision. The record contains no agreement signed by VSR and McLendon specifying the terms and conditions upon which VSR would provide broker-dealer services to McLendon.

In connection with establishing his individual VSR investment brokerage account, McLendon also signed a form captioned "Advantage Account$^{SM}$ Agreement" (the McLendon Agreement). Immediately below the caption of the form, a box has been checked indicating McLendon was making an "Application" for an Advantage Account$^{SM}$. McLendon's signature is the only signature on the form; there is no signature line on the preprinted form for any counterparty.[2] The McLendon Agreement contains an arbitration provision encompassing disputes between the account owner and the "Introducing Firm, Clearing Agent and any Sub-Advisor (and/or any other agent)." Incorporated by reference into the McLendon Agreement is another document entitled "Advantage Account Terms and Conditions" (the Terms and Conditions). The Terms and Conditions document indicates it contains "important information regarding your Advantage Account . . . and your acknowledgment of certain understandings between you, your Introducing Firm ('Introducing Firm') and First Clearing Corporation, LLC ('Clearing Agent', 'Broker') in opening your Advantage Account." The Terms and Conditions contain an arbitration provision identical to the arbitration provision in the McLendon Agreement. In neither the McLendon Agreement nor the incorporated Terms and Conditions is

---

[2] It is not clear from the face of the form who the counterparty or counterparties to an "Advantage Account$^{SM}$ Agreement" would be, although there is a footer at the bottom of the form that reads "Accounts carried by First Clearing, LLC. Member NYSE/SIPC."

the term "Introducing Firm" defined or declared to be VSR or any other entity. The record contains no agreement signed by First Clearing Corporation, LLC (FCC) and McLendon specifying the terms and conditions under which FCC would provide clearing agent services to McLendon.

In January 2007, McLendon used his individual VSR investment brokerage account to purchase notes from DBSI through the DBSI 2006 Secured Notes Corporation (the DBSI Investment). According to appellees, they committed $1,050,000 to the DBSI Investment.

In July 2007, McLendon opened an investment brokerage account with VSR in the name of Tri-State. McLendon signed on behalf of Tri-State, as its Managing Partner, a VSR New Account Form tailored to "business and trust accounts." This subsequent VSR New Account Form was also signed by Charles Chapman in the capacity of a "Registered Rep," but contained no signature of a "Principal." The VSR New Account Form required that McLendon provide client profile and risk tolerance information, but does not contain the terms and conditions of any services to be provided by VSR and does not contain an arbitration provision. The record contains no agreement signed by VSR and Tri-State specifying the terms and conditions upon which VSR would provide broker-dealer services to Tri-State.

In connection with establishing the Tri-State investment brokerage account with VSR, McLendon also signed on behalf of Tri-State the form captioned "Advantage Account$^{SM}$ Agreement (the Tri-State Agreement). Immediately below the caption of the form, a box has been checked indicating McLendon was making an "Application" for an Advantage Account$^{SM}$. McLendon's signature is the only signature on the form; there is no signature line on the preprinted form for any counterparty. In all respects material to this opinion, the Tri-State Agreement is identical to the McLendon Agreement; it contains the same arbitration provision and incorporates by reference the Terms and Conditions. Accordingly, in neither the Tri-State

Agreement nor the incorporated Terms and Conditions is the term "Introducing Firm" defined or declared to be VSR or any other entity. The record contains no agreement signed by FCC and Tri-State specifying the terms and conditions under which FCC would provide clearing agent services to Tri-State.

Following creation of the Tri-State investment brokerage account with VSR, the DBSI investment was transferred from McLendon's individual investment brokerage account to the Tri-State investment brokerage account. Subsequently, DBSI filed for bankruptcy protection. According to appellees, as a result of the DBSI bankruptcy proceeding, they will be unable to recover "all the monies due to them relating to the DBSI Investment and as a result have been damaged."

In their fourth amended petition, which was appellees' live pleading at the time the trial court denied appellants' motions to compel arbitration, appellees assert causes of action for breach of fiduciary duty, negligence, negligent representation, fraud, breach of contract, and civil conspiracy against the Chapman appellants. Appellees also seek disgorgement of payments made to the Chapman appellants. Appellees assert causes of action for negligence and violations of Texas securities law against VSR.[3]

## Motions to Compel Arbitration

McLendon signed the McLendon Agreement in his individual capacity, and he signed the Tri-State Agreement in the capacity of Managing Partner of Tri-State. Each agreement incorporated the Terms and Conditions. Each agreement includes "information concern[ing] the arbitration of controversies":

---

[3] In their third amended petition, appellees asserted a breach of contract claim against VSR in which appellees alleged they "entered into written contracts with VSR to provide them with professionally competent, proper and accurate investment advice and services." However, a breach of contract claim was not asserted against VSR in appellees' fourth amended petition.

This Agreement contains a predispute arbitration clause.  By signing an arbitration agreement, the parties agree as follows:

- All of the parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which the claim is filed.

The agreements also include the following arbitration provision:

It is agreed that all controversies or disputes which may arise between you and Introducing Firm, Clearing Agent and any Sub-Advisor (and/or any other agent), (collectively, "us") concerning any transaction or the construction, performance or breach of this Agreement or any other agreement between us, whether entered into prior to, on, or subsequent to the date of this Agreement, including any controversy concerning whether an issue is arbitrable, shall be determined by arbitration conducted before, and only before, an arbitration panel set up by either the National Association of Securities Dealers, Inc. ("NASD") or the New York Stock Exchange, Inc. ("NYSE") in accordance with their respective procedures. Any of us may initiate arbitration by filing a written claim with the NASD or NYSE.  Any arbitration under this Agreement will be conducted pursuant to the Federal Arbitration Act and the Law of the Commonwealth of Virginia.

The Terms and Conditions contain the same arbitration provision.

VSR and the Chapman appellants filed motions to compel arbitration of appellees' claims against them.  The trial court denied the motions to compel arbitration.  VSR and the Chapman appellants appealed the trial court's denial of their motions to compel arbitration.

**Striking Portions of the Affidavit of Charles Chapman**

In support of its motion to compel arbitration, VSR attached the affidavit of Charles Chapman.  Appellees objected to the first sentence of paragraph 7 and to paragraph 8 of that affidavit on the bases that the statements violate the best evidence rule, omit a showing of how the witness has personal knowledge of the subject matter, constitute legal conclusions, consist of speculation, and contain conclusions to which a proper predicate has not been laid.  Without stating a legal basis, the trial court sustained appellees' objections and ordered the following stricken from Charles Chapman's affidavit:

7.  Each of page 3 of the Advantage Account Agreement for Account Number 8783-1333, page 2 of the Advantage Account Agreement for Account Number

3471-9414, and page 15 of the related Advantage Account Terms and Conditions, contain provisions requiring arbitration of disputes between Mr. McLendon and VSR, which acted as the Introducing Firm for purposes of establishing Mr. McLendon's account.

8. It is my understanding that, pursuant to the foregoing account opening agreements, Mr. McLendon, individually and on behalf of his affiliated entities, agreed that any and all controversies and disputes with VSR and any of its representatives (which would include me) would be brought in an arbitration proceeding before the Financial Industry Regulatory Authority or FINRA, the successor of the NASD referred to in the documents.

In VSR's second issue, it contends the trial court erred in sustaining appellees' objections and striking the portions of Charles Chapman's affidavit in which he stated that VSR "acted as the Introducing Firm for purposes of establishing McLendon's account" and his "understanding that, pursuant to the . . . account opening agreements, Mr. McLendon, individually and on behalf of his affiliated entities, agreed that any and all controversies and disputes with VSR and any of its representatives [including Charles Chapman] would be brought in an arbitration proceeding." VSR contends those portions of Charles Chapman's affidavit address "the circumstances surrounding McLendon's execution of the account opening documents and VSR's representatives [sic] understanding and intent when entering into the agreement."

We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *See Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001); *Collin Cnty. v. Hixon Family P'Ship*, 365 S.W.3d 860, 876–77 (Tex. App.—Dallas 2012, pet. denied). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without reference to any guiding rules and principles. *Downer v. Acquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). A trial court's evidentiary ruling must be upheld if there is a legitimate basis for it. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). For the exclusion of evidence to constitute reversible error, the complaining party must show that (1) the trial court committed error and (2) error was reasonably calculated to cause and probably did

cause rendition of an improper judgment. *McGraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992); *see also* TEX. R. APP. P. 44.1(a)(1). In making the determination, we review the entire record. *See Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989).

The trial court sustained appellees' objection and struck the portion of Charles Chapman's affidavit in which he stated that VSR "acted as the Introducing Firm for purposes of establishing McLendon's account." The McLendon Agreement and the Tri-State Agreement (the Agreements) and the Terms and Conditions all use the term "Introducing Firm" without defining it or declaring VSR or any other entity to be the "Introducing Firm." Chapman's declaration in his affidavit that VSR was the "Introducing Firm" for purposes of establishing McLendon's VSR account and the Tri-State VSR account provides no underlying information supporting his conclusion. A conclusory statement is one that does not provide the underlying facts to support the statement. *Schindler v. Baumann*, 272 S.W.3d 793, 796 (Tex. App.—Dallas 2008, no pet.); *see also Holloway v. Dekkers*, 380 S.W.3d 315, 323 (Tex. App.—Dallas 2012, no pet.) (by stating agreement was one which could be performed within one year, affiant asserted nothing more than conclusion; affidavit did not set forth facts that explained how or why agreement could be performed within one year or otherwise provide details to support affiant's conclusion; trial court reasonably could have determined statement did not contain sufficient factual detail to qualify as proper summary-judgment proof and did not abuse its discretion in sustaining objections to statement). Chapman's statement that VSR was the "Introducing Firm" is otherwise unsupported by the record and is conclusory.

The trial court sustained appellees' objection and struck the portion of Charles Chapman's affidavit in which he stated his "understanding that, pursuant to the . . . account opening agreements, Mr. McLendon, individually and on behalf of his affiliated entities, agreed that any and all controversies and disputes with VSR and any of its representatives [including

Charles Chapman] would be brought in an arbitration proceeding." The mere recitation that an affidavit is based on personal knowledge is inadequate if the affidavit does not positively show a basis for the knowledge. *Valenzuela v. State Cnty. Mut. Fire Ins. Co.*, 317 S.W.3d 550, 553 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The affidavit must explain how the affiant has personal knowledge. *Id*. An affidavit not based on personal knowledge is legally insufficient. *Id*. at 554; *see also* TEX. R. EVID. 602. Here, Charles Chapman stated his subjective belief or "understanding." His "understanding" does not equate to personal knowledge. *See Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam) ("We should not equate Manning's 'understanding' to personal knowledge about whether Ryland notified anyone about the use of untreated wood."); *Soodeen v. Rychel*, 802 S.W.2d 361, 363 (Tex. App.—Houston [1st Dist.] 1990, writ denied) (affidavit stating "understanding" of who was in vehicle and "belief" about who was driving vehicle insufficient to establish personal knowledge).[4]

After reviewing the record, we cannot conclude the trial court abused its discretion in sustaining the objections to Charles Chapman's affidavit and striking the objected-to portions of that affidavit.[5] We resolve VSR's second issue against it.

### Arbitrability of Appellees' Disputes With VSR

In its first issue, VSR contends the trial court abused its discretion by failing to compel arbitration of appellees' claims because a valid agreement to arbitrate such claims existed between appellees and VSR and between appellees and VSR's representative, Charles Chapman. Appellees contend there is no evidence VSR was a party to or had the right to enforce the arbitration provision of the Agreements.

---

[4] *See also Marty's Food & Wine, Inc. v. Starbucks Corp.*, No. 05-01-00008-CV, 2002 WL 31410923, at *2 (Tex. App.—Dallas Oct. 28, 2002, no pet.) (not designated for publication) (affiant's understanding does not equate to personal knowledge).

[5] Further, VSR has neither asserted nor shown on appeal that exclusion of the two sentences from Charles Chapman's affidavit probably resulted in the rendition of an improper judgment. *See Maris*, 828 S.W.2d at 757; *see also* TEX. R. APP. P. 44.1(a)(1).

The arbitration provision contained in each of the Agreements specifically states any arbitration under the agreement will be conducted pursuant to the Federal Arbitration Act (FAA), and the parties to this appeal do not dispute that the FAA applies to the issue of arbitrability of appellees' claims. *See In re Merrill Lynch, Pierce, Fenner & Smith Inc.*, 131 S.W.3d 709, 712 (Tex. App.—Dallas 2004, orig. proceeding) (FAA applies to contracts "evidencing a transaction involving commerce" and sale of securities involves interstate commerce); *see also In re Whitfield*, 115 S.W.3d 753, 757 (Tex. App.—Beaumont 2003, orig. proceeding) (sale of securities held to involve interstate commerce). Section 51.016 of the civil practice and remedies code provides that in a matter subject to the FAA, a party may appeal from an interlocutory order of a district court "under the same circumstances that an appeal from a federal district court's order or decision would be permitted by" section 16 of the FAA. TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West Supp. 2012); *see CMH Homes v. Perez*, 340 S.W.3d 444, 448–49 (Tex. 2011) (explaining that section 51.016 of the civil practice and remedies code provides for interlocutory appeals in FAA cases so long as "it would be permitted under the same circumstances in federal court under [9 U.S.C.] section 16"). Section 16 of the FAA provides an appeal may be taken from an order "denying an application under section 206 of this title to compel arbitration." 9 U.S.C.A. § 16(a)(1)(C) (West 2009); *see also Austin Commercial Contractors, L.P. v. Carter & Burgess, Inc.*, 347 S.W.3d 897, 900 (Tex. App.—Dallas 2011, pet. denied).

We defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo. *In re Labatt Food Service, L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) (whether an agreement imposes a duty to arbitrate is question of law which is reviewed de novo); *Trammell v. Galaxy Ranch Sch., L.P.*, 246 S.W.3d 815, 820

(Tex. App.—Dallas 2008, no pet.). "This standard is the same as the abuse of discretion standard of review and we will apply that standard to review interlocutory appeals under section 51.016." *Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 863 (Tex. App.—Dallas 2010, no pet.).

In general, a party seeking to compel arbitration under the FAA must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims at issue fall within that agreement's scope. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "The initial burden of the party seeking to compel arbitration—to establish the arbitration agreement's existence—includes proving the entity seeking to enforce the arbitration agreement was a party to it or had the right to enforce the agreement notwithstanding." *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 836 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding); *see also Pepe Int'l Dev. Co. v. Pub Brewing Co.*, 915 S.W.2d 925, 931 (Tex. App.—Houston [1st Dist.] 1996, no writ). "An entity's burden to prove it is a signatory exists because arbitration is a creature of contract: when an entity seeks to compel arbitration, it must first establish its right to that contract remedy." *Mohamed*, 89 S.W.3d at 836. The party seeking to avoid arbitration then bears the burden of proving its defenses against enforcing the otherwise valid arbitration provision. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (orig. proceeding) (per curiam).

Although there is a strong presumption favoring arbitration, that presumption arises only after the party seeking to compel arbitration proves a valid arbitration agreement exists. *J.M. Davidson, Inc.*, 128 S.W.3d at 227; *see also Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 496 (Tex. App.—Dallas 2011, pet. denied) ("Even the exceptionally strong policy favoring arbitration cannot justify requiring litigants to forego a judicial remedy when they have not agreed to do so."). We apply ordinary state contract law principles in deciding whether the

–11–

parties agreed to arbitrate under the FAA. *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (applying Texas law) (federal policy favoring arbitration does not apply to determination of whether there is a valid agreement to arbitrate between the parties; instead "[o]rdinary contract principles determine who is bound.") (quoting *Daisy Mfg. Co., Inc. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994)). "The parties' agreement to arbitrate must be clear. In this determination, Texas contract law applies." *Trico Marine Servs., Inc. v. Stewart & Stevenson Technical Servs.*, 73 S.W.3d 545, 548 (Tex. App.—Houston [1st Dist] 2002, no pet.) (citation omitted); *see also McCarthy v. Azure*, 22 F.3d 351, 355 (1st Cir. 1994) ("The federal policy [favoring arbitration], however, does not extend to situations in which the identity of the parties who have agreed to arbitrate is unclear.").[6]

The only brokerage account documents in the record that reference VSR by name are the two VSR New Account Forms. The VSR New Account Forms signed by McLendon, individually and on behalf of Tri-State, and Charles Chapman as a "Registered Rep," do not contain an arbitration provision and do not incorporate by reference any other document. The Agreements, signed by McLendon, individually and on behalf of Tri-State, and the Terms and Conditions incorporated by reference into the Agreements, contain the arbitration provision at issue. The arbitration provision encompasses disputes between the account owner and the "Introducing Firm, Clearing Agent, and any Sub-Advisor (and/or any other agent)." The Agreements do not identify the party or parties with which appellees are to arbitrate claims other than in terms of the "Introducing Firm," "Clearing Agent," and "any Sub-Advisor (and/or any

---

[6] *See also Verity Solutions, L.L.C. v. TASC, Inc.*, No. CIVASA05CA548-XR, 2006 WL 488396, *3 (W.D. Tex. Feb. 6, 2006) ("Courts should be extremely cautious about forcing arbitration in 'situations in which the identity of the parties who have agreed to arbitrate is unclear.'") (quoting *Azure*, 22 F.3d at 355).

other agent)."[7]  The Terms and Conditions contain the account owner's acknowledgment of understandings between the account owner and "your Introducing Firm ('Introducing Firm') and First Clearing Corporation, LLC ('Clearing Agent', 'Broker') in opening the your Advantage Account."  The Terms and Conditions state the terms "'we', 'us', 'our' and 'ours' refer to Introducing Firm and Clearing Agent."  While the Terms and Conditions identify First Clearing Corporation, LLC as the "Clearing Agent, Broker" for the accounts, the term "Introducing Firm" is never defined and an Introducing Firm is not identified by name.[8]

VSR contends it is the "Introducing Firm" referenced in the Agreements, signed by McLendon, individually and on behalf of Tri-State, and therefore appellees agreed to arbitrate their claims against VSR.  Appellees contend VSR failed to establish either that it is the "Introducing Firm" or that a valid, enforceable arbitration agreement exists between VSR and appellees.  The burden of showing a right to enforce an arbitration agreement, as with the overall burden of establishing the existence of an arbitration agreement, is generally evidentiary. *See In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding).  What is clear from the evidentiary record in this case is that VSR is not a named party to the Agreements, there is no definition in the Agreements or Terms and Conditions of the term "Introducing Firm," and neither the Agreements nor the Terms and Conditions declare VSR or any other entity to be the "Introducing Firm."  VSR poses the question "how can the account agreements in evidence be construed in any way other than concluding that reference to the Introducing Firm was intended to mean VSR?"  But the question is not whether we believe VSR could be the "Introducing Firm;" the question is whether the trial court abused its discretion in concluding

---

[7] By signing the Agreements, McLendon authorized "First Clearing, LLC, Bank One, Wachovia Bank, N.A., and VISA® to establish checking privileges and to issue VISA® CheckCard(s) as instructed on this Account Application."

[8] The Terms and Conditions also state the customer authorizes "Introducing Firm, Clearing Agent, and Bank One" to open a checking account and Wachovia Bank, N.A. and VISA® to issue VISA® Checkcards.

there was no clear agreement between VSR and appellees to arbitrate. We cannot conclude the trial court should have found an agreement between VSR and appellees to arbitrate. *See In re Hawthorne Townhomes, L.P.*, 282 S.W.3d 131 (Tex. App.—Dallas 2009, orig. proceeding) (formation of contract requires meeting of the minds on the contract's essential terms). VSR failed to carry its burden of establishing it was a party to the Agreements and entitled to enforce their arbitration provision. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737; *Trico Marine Servs., Inc.*, 73 S.W.3d at 548. Having concluded VSR failed to establish the existence of a valid and enforceable arbitration agreement between it and appellees, we conclude the trial court did not abuse its discretion in denying VSR's motion to compel arbitration. Accordingly, we resolve VSR's first issue against it.

### Arbitrability of Appellees' Disputes With the Chapman Appellants

In their first issue, the Chapman appellants contend the trial court abused its discretion in denying their motion to compel arbitration because appellees' claims "arise from and through agreements containing valid arbitration agreements." The Chapman appellants assert valid arbitration provisions contained in the Agreements and Terms and Conditions agreed to by McLendon are "clearly marked and clearly stated."[9] They further argue that, because all of appellees' claims relate to the relationships with VSR and the Chapman appellants, every claim asserted by appellees "falls within the purview of the arbitration agreements." Further, Charles Chapman argues that he is covered by arbitration provisions in the "VSR Advantage Account Agreements" because those provisions expressly apply to "any other agent" of VSR, and Charles Chapman was an agent of VSR.[10] The success of these arguments is dependent on there being a

---

[9] In their motion to compel arbitration, the Chapman appellants also relied on an arbitration provision in a June 30, 2008 engagement letter with Chapman Hext. On appeal, the Chapman appellants do not assert the trial court erred in denying their motion to compel arbitration based on the June 30, 2008 engagement letter.

[10] We note the Agreements are not denoted "*VSR* Advantage Account Agreements." (Emphasis added.). Further, contrary to the Chapman appellants' assertions in their appellate brief, neither VSR nor Charles Chapman signed the Agreements as those documents were signed only by

–14–

valid and enforceable arbitration agreement between appellees and VSR. As discussed above in connection with VSR's first issue, we have concluded VSR failed to establish the existence of a valid and enforceable arbitration agreement between it and appellees. VSR failed to establish it was the "Introducing Firm" that is subject of the arbitration provision of the Agreements, and the record therefore does not establish Charles Chapman was an agent of the Introducing Firm. Moreover, there is no evidence the remaining Chapman appellants—Chapman Hext, Gregory Hext, or CHWM—were agents of the "Introducing Firm."[11]

On this record, there is no evidence the Chapman appellants were parties to or had the right to enforce the arbitration provision of the Agreements as agents of the "Introducing Firm." *See In re Oakwood Mobile Homes*, 987 S.W.2d at 573 (burden of showing one's right to enforce an arbitration agreement, as with the overall burden of establishing arbitration agreement's existence, is generally evidentiary). We are unable to conclude the trial court should have determined that the Chapman appellants were parties to or had the right to enforce the arbitration provisions. We resolve the Chapman appellants' first issue against them.

In their second issue, the Chapman appellants contend the trial court abused its discretion in denying their motion to compel arbitration of appellees' claims against them as non-signatories to the arbitration agreements because appellees "rely on the terms of the written agreement which contain [sic] the arbitration agreements in asserting their claims against the non-signatories." Although the Chapman appellants are not signatories to the Agreements containing the arbitration provision, they contend that under the direct benefits estoppel doctrine, they may compel arbitration. Thus, we must determine whether appellees' claims against the

McLendon, individually and on behalf of Tri-State. The Chapman appellants incorrectly assert in their appellate brief that "Plaintiffs and VSR are signatories to both VSR Advantage Account Agreements" and "Defendant Charles Chapman signed those [Agreements] as the representative for Defendant VSR."

[11] Appellees have not asserted causes of action against the Chapman appellants as purported agents of VSR. Further, even had there been a valid and enforceable arbitration agreement between appellees and VSR as the Introducing Firm, there is no evidence appellants Chapman Hext, Gregory Hext, and CHWM were agents of VSR entitled to enforce such an arbitration agreement.

Chapman appellants fall within one of the circumstances in which Texas courts recognize an arbitration agreement as binding between a signatory and a non-signatory.

The abuse of discretion standard applies to our review of the trial court's decision not to compel arbitration under the equitable doctrine of direct benefits estoppel. *See In re Advance Payroll Funding, Ltd.*, 254 S.W.3d 710, 714 (Tex. App.—Dallas 2008, orig. proceeding) (direct-benefits estoppel does not apply and trial court did not abuse its discretion in denying motion to compel arbitration on that ground); *In re James E. Bashaw & Co.*, 305 S.W.3d 44, 53 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding); *see also In re Weekley Homes, L.P.*, 180 S.W.3d 127, 134–35 (Tex. 2005) (orig. proceeding) (recognizing, in suit where signatory sought to compel arbitration of non-signatory's claims under direct benefits estoppel, "the equitable nature of the doctrine may render firm standards inappropriate, requiring trial courts to exercise some discretion based on the facts of each case").

Generally, only the signatories to an arbitration agreement are bound by the agreement. *Van Zanten v. Energy Transfer Partners, L.P.*, 320 S.W.3d 845, 847 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 171.001(a) (West 2011) (written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that exists at the time of the agreement or arises between the parties after the date of the agreement). However, in certain limited circumstances, pursuant to an equitable estoppel theory, a defendant that is a non-signatory to an arbitration agreement can nevertheless compel arbitration against a signatory plaintiff. *See Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 526–28 (5th Cir. 2000). As non-signatories to the Agreements, the Chapman appellants must show that an accepted equitable estoppel theory permits them to enforce the arbitration provision in the Agreements. *See id.*

Direct benefits estoppel is an equitable estoppel theory enabling a non-signatory to compel arbitration if the nature of the underlying claims require the signatory to rely on the terms of the written agreement containing the arbitration provision in asserting its claims against the non-signatory. *In re Hartigan*, 107 S.W.3d 684, 691 (Tex. App.—San Antonio 2003, orig. proceeding [mand. denied]); *see also Rachal v. Reitz*, No. 11-0708, 2013 WL 1859249, at *5 n.5 (Tex. May 3, 2013) (orig. proceeding) (the doctrine of direct benefits estoppel may bind non-signatories to arbitration agreements under state law) (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739). "Claims must be brought on a contract and arbitrated if liability arises solely from the contract or must be determined by reference to it." *In re Weekley Homes*, 180 S.W.3d at 132. "When each of a signatory's claims against a non[-]signatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 195 S.W.3d 807, 814 (Tex. App.—Dallas 2006, orig. proceeding) (quoting *Grigson*, 210 F.3d at 527) (citation omitted)). A non-signatory may invoke the direct benefits estoppel exception to enforce an arbitration clause contained in a contract that contains other terms on which the signatory plaintiff must rely to prosecute its claims. *See*, *e.g.*, *McMillan v. Computer Translation Sys. & Support*, 66 S.W.3d 477, 482 (Tex. App.—Dallas 2001, orig. proceeding). The equitable theory of direct benefits estoppel precludes a signatory claimant from having it "both ways" in "seek[ing] to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny[ing] arbitration's applicability because the defendant is a non-signatory." *In re James E. Bashaw & Co.*, 305 S.W.3d at 54 (quoting *Grigson*, 210 F.3d at 528).

Further, if a party or nonparty seeks to derive a direct benefit from a contract containing an arbitration clause, he may be compelled to arbitrate under the doctrine of "direct benefits

estoppel." *In re Weekley Homes*, 180 S.W.3d at 131 (applying doctrine to nonparty); *see also Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006) (sometimes a person who is not a party to the agreement can compel arbitration with one who is, and vice versa; a person who seeks by his claim "to derive a direct benefit from the contract containing the arbitration provision" may be equitably estopped from refusing arbitration"). Claims must be brought on a contract and arbitrated if liability arises solely from the contract or must be determined by reference to it. *Id*.; *see also Grigson*, 210 F.3d at 527 ("When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.") (quoting *M/S Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

"Under both Texas and federal law, whether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim, not artful pleading." *In re Weekley Homes*, 180 S.W.3d at 131–32. "When determining whether claims fall within the scope of the arbitration agreement, we look to the factual allegations, not the legal claims." *Rachal*, 2013 WL 1859249, at *9 (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding)); *see also Prudential Sec., Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex. 1995) (orig. proceeding) (per curiam) (in determining whether claim falls within the scope of an arbitration agreement, we focus on factual allegations of the complaint rather than causes of action asserted). Generally, if the facts alleged "touch matters," have a "significant relationship" to, are "inextricably enmeshed" with, or are "factually intertwined" with the contract containing the arbitration provision, the claim is arbitrable. *Pennzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494, 498 (Tex. App.—San Antonio 2000, orig. proceeding). But "[i]f the facts alleged in support of the claim stand alone, are completely independent of the contract [containing the arbitration provision], and the claim can be maintained without reference to the contract, the claim is not

subject to arbitration." *Id.* Direct benefits estoppel may not apply if the claim merely "relates" to the contract containing the arbitration provision. *See In re Kellogg Brown & Root*, 166 S.W.3d at 741.

"Equitable estoppel cannot give non-parties a greater right to arbitration than the parties themselves have." *Meyer*, 211 S.W.3d at 306. "Equitable estoppel is inapplicable . . . when the benefit is merely indirect; that is, when the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law." *In re Morgan Stanley & Co., Inc.*, 293 S.W.3d 182, 184 n.2 (Tex. 2009) (orig. proceeding) (citing *In re Kellogg Brown & Root*, 166 S.W.3d at 740–41). "Claims can be brought in tort (and in court) if liability arises from general obligations imposed by law." *In re Weekley Homes*, 180 S.W.3d at 132; *see also Rachal*, 2013 WL 1859249, at *5 (if the claims are based on the agreement containing the arbitration agreement, they must be arbitrated, but if the claims can stand independently of the agreement, they may be litigated) (citing *Kellogg Brown & Root*, 166 S.W.3d at 739–40). Arbitration is not required merely because two claims arise from the same transaction. *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191 (Tex. 2007) (orig. proceeding); *Trammell*, 246 S.W.3d at 820.

The question here is whether appellees' claims against the Chapman appellants must be determined by reference to the Agreements and Terms and Conditions which contain the arbitration provision, and, therefore, whether, as non-signatories to the Agreements, the Chapman appellants may compel appellees to arbitrate their claims against them. The Chapman appellants argue that appellees' claims against them rely on the Agreements, and appellees' live pleading "makes reference to or presumes the existence of" the Agreements, "because they all relate to and arise from the DBSI Investment, which came into existence through" the Agreements. The Chapman appellants also assert that appellees' reference the Agreements in

–19–

alleging the Chapman appellants "caused [appellees] to sign various agreements and forms" that contained false information. According to the Chapman appellants, none of appellees' claims against them can survive without reliance upon the Agreements, and, therefore, the direct benefits theory of equitable estoppel justifies the Chapman appellants' motion to compel arbitration in this case.

Appellees assert the direct benefits theory of equitable estoppel does not apply in this case because the Chapman appellants do not come within the narrow exception fashioned by courts to prevent claimants from seeking to hold a non-signatory to the duties of a contract while at the same time escaping the arbitration provisions of that agreement. Appellees assert they are not suing Charles Chapman as an agent of VSR; instead, they are suing Charles Chapman and the other Chapman appellants as a result of financial advice given by them to McLendon. Accordingly, appellees contend their claims against VSR and the Chapman appellants are not the same, their allegations against the Chapman appellants arise from appellees' contracts with the Chapman appellants regarding the services the Chapman appellants provided appellees, and they do not seek a direct benefit from the Agreements.

In addition to seeking disgorgement of payments made to the Chapman appellants, appellees assert causes of action for breach of fiduciary duty, negligence, negligent misrepresentation, fraud, breach of contract, and civil conspiracy against them. Appellees allege the Chapman appellants provided appellees a variety of accounting and investment advice services, including functioning in the role of Chief Financial Officer for various McLendon business ventures. The Chapman appellants allegedly provided direction on how, where, and to what extent monies would be invested by various McLendon business ventures. Appellees allege the Chapman appellants advised appellees to hire VSR, failed to explain certain "forms and agreements entered into with VSR," included information on those forms that the Chapman

appellants knew or should have known was false, made representations to appellees regarding the DBSI Investment, and failed to conduct proper due diligence associated with VSR and DBSI before recommending and causing appellees to make the DBSI Investment. Appellees also assert one or more of the Chapman appellants breached oral and written contracts with appellees to provide investment and tax services.

Here, appellees do not have to rely on the terms of the Agreements and Terms and Conditions, including the arbitration provision, in asserting their claims against the Chapman appellants. The Chapman appellants do not explain what, if any, "direct benefit" appellees are seeking from the Agreements containing the arbitration provision. Appellees' claims against the Chapman appellants, while referencing "forms and agreements entered into with VSR," do not seek a benefit from or to enforce provisions or obligations set forth in the "forms and agreements." Thus, appellees' claims "stand independently" of the Agreements. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739–40; *In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 195 S.W.3d at 816. In this case, appellees are not seeking to enforce provisions of the Agreements, while evading arbitration with the non-signatory Chapman appellants. *See In re James E. Bashaw & Co.*, 305 S.W.3d at 54.

We reject the Chapman appellants' assertion that the direct benefits theory of equitable estoppel requires appellees to arbitrate their claims against the Chapman appellants. We conclude the trial court did not abuse its discretion in denying the Chapman appellants' motion to compel arbitration based on the direct benefits estoppel doctrine. We resolve the Chapman appellants' second issue against them.

In their third issue, the Chapman appellants contend the trial court abused its discretion in denying their motion to compel arbitration of appellees' claims against them as non-signatories to valid arbitration agreements, because the appellees, as "signatories to the contracts containing

–21–

the arbitration agreements, raise allegations of 'substantially interdependent and concerted misconduct' by both the non-signatories [the Chapman appellants] and one or more of the signatories to the contract." The Chapman appellants contend that because appellees as signatories to the Agreements sued VSR, a purported signatory to the Agreements, and the Chapman appellants, non-signatories to the Agreements, based on substantially interdependent and concerted misconduct by VSR and the Chapman appellants, the non-signatory Chapman appellants may enforce the arbitration provision of the Agreements against appellees. *See McMillan*, 66 S.W.3d at 482 ("Application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.") (quoting *Grigson*, 210 F.3d at 527). The Chapman appellants' argument fails.

As with the Chapman appellants' first issue, this contention is dependent on there being a valid and enforceable arbitration agreement between appellees and VSR. As discussed above regarding VSR's first issue and the Chapman appellants' first issue, we have concluded VSR failed to establish the existence of a valid and enforceable arbitration agreement between it and appellees. Therefore, because VSR has not established it was a party to a valid and enforceable arbitration agreement, application of the equitable estoppel theory of "substantially interdependent and concerted misconduct" is not warranted here; appellees, as signatories to the Agreements, have not raised allegations of substantially interdependent and concerted misconduct by the non-signatory Chapman appellants and a signatory to the Agreements.

Further, appellees do not allege the Chapman appellants engaged in "substantially interdependent and concerted misconduct" with VSR. Appellees allege the Chapman appellants conspired together to induce appellees to make the DBSI investment. While the Chapman appellants state appellees would not have signed the Agreements and made the DBSI Investment

–22–

"absent the cooperation of the Chapman [appellants] with VSR," appellees do not allege cooperation of the Chapman appellants and VSR in effecting appellees' entering into the Agreements or making the DBSI investment. Likewise, contrary to the Chapman appellants' assertion, appellees have not pleaded that the Chapman appellants "acted on VSR's behalf to cause [appellees] to complete 'various agreements and forms.'"

We conclude the trial court did not abuse its discretion in denying the Chapman appellants' motion to compel arbitration based on an equitable estoppel theory of "substantially interdependent and concerted misconduct."[12] We resolve the Chapman appellants' third issue against them.

## Conclusion

We affirm the trial court's order denying VSR's and the Chapman appellants' motions to compel arbitration.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

121016F.P05

---

[12] In *Grigson*, the Fifth Circuit Court of Appeals stated that equitable estoppel is "much more readily applicable" when a case presents both bases of direct benefits and substantially interdependent and concerted misconduct. *Grigson*, 210 F.3d at 527–28. As addressed above, we rejected the Chapman appellants' contention in their second issue that the trial court abused its discretion in denying their motion to compel arbitration based on the doctrine of direct benefits estoppel.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

VSR FINANCIAL SERVICES, INC.,
CHAPMAN HEXT & CO., P.C.,
GREGORY W. HEXT, CH WEALTH
MANAGEMENT, LLC, WHITE ROCK
ADVISORS, LLC, AND CHARLES E.
CHAPMAN, Appellants

No. 05-12-01016-CV          V.

GORDON B. MCLENDON, JR., AND TRI-
STATE THEATRES, Appellees

On Appeal from the 95th Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. 12-01326.
Opinion delivered by Justice Fillmore,
Justices O'Neill and Francis participating.

In accordance with this Court's opinion of this date, appellant White Rock Advisors, LLC's appeal is **DISMISSED**. The order of the trial court denying appellants' motions to compel arbitration is **AFFIRMED**.

It is **ORDERED** that appellees Gordon B. McLendon, Jr., and Tri-State Theatres recover their costs of this appeal from appellants VSR Financial Services, Inc., Chapman Hext & Co., P.C., Gregory W. Hext, CH Wealth Management, LLC, and Charles E. Chapman

Judgment entered this 14th day of August, 2013.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

–24–