**REVERSE AND REMAND; Opinion Filed April 14, 2020**



**In The**
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-00303-CV

**MULTI PACKAGING SOLUTIONS DALLAS, INC. AND WESTROCK COMPANY, Appellants**

**V.**

**AUDELIA ALCALA, Appellee**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-02574**

## MEMORANDUM OPINION

Before Justices Whitehill, Schenck, and Evans
Opinion by Justice Schenck

Multi Packaging Solutions Dallas, Inc. ("MPS") and WestRock Company ("WestRock") appeal the trial court's order denying their motion to compel arbitration. For the reasons discussed below, we reverse the trial court's order denying arbitration and remand this case with instructions to order the parties to arbitration and stay the underlying case pending the outcome of the arbitration. Because all issues are settled in law, we issue this memorandum opinion. Tex. R. App. P. 47.4.

## BACKGROUND

In 2007, appellee Audelia Alcala began working for Great Western Industries, Inc. ("Great Western"). The following year, MPS acquired Great Western, after which Alcala was employed by MPS.

In February 2018, Alcala sued MPS and WestRock, asserting negligence and premises liability claims against both[1] and alleging she had slipped and fallen while performing her job duties at MPS on February 29, 2016. MPS and Westrock filed a motion to compel arbitration, asserting that in exchange for benefits pursuant to an Employee Injury Benefit Plan ("Plan"), Alcala had agreed to arbitrate all on-the-job injury claims described in a Mutual Agreement to Arbitrate ("Agreement") as evidenced by a Receipt and Arbitration Acknowledgement ("Acknowledgement"). In their motion, appellants further argued the Federal Arbitration Act ("FAA") governed the Agreement, and the Agreement provided the FAA applied. Alcala responded, asserting various grounds for denying the motion to compel, and appellants filed a reply and amended reply in support of their motion to compel. After conducting hearings on the motion to compel, the trial court signed an order denying the motion, and this interlocutory appeal followed.

---

[1] Alcala's petition alleged both appellants were possessors of the premises where she was injured. Additionally, appellants provided affidavit testimony that in 2017 WestRock purchased all of MPS's outstanding shares.

## DISCUSSION

In their sole issue on appeal, appellants urge that the existence of a valid written arbitration agreement that encompasses Alcala's claim that appellants' negligence caused her on-the-job injury required submission of this claim to arbitration. In particular, and notwithstanding Alcala's claim to have not understood the Agreement she signed, appellants urge that because she accepted benefits under the Plan, Alcala is estopped from challenging this arbitration agreement.

We defer to the trial court's factual determinations that are supported by evidence, but review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

In general, a party seeking to compel arbitration under the FAA must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims at issue fall within that agreement's scope. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex.2005) (orig. proceeding). The initial burden of the party seeking to compel arbitration—to establish the arbitration agreement's existence—includes proving the entity seeking to enforce the arbitration agreement was a party to it or had the right to enforce the agreement notwithstanding. *VSR Fin. Servs., Inc. v. McLendon*, 409 S.W.3d 817, 827 (Tex. App.—Dallas 2013, no pet.). The party seeking to avoid arbitration then bears the burden of proving its defenses against enforcing the otherwise valid arbitration provision. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (orig. proceeding) (per curiam).

The record contains copies of the Plan, Agreement, and Acknowledgement, as well as Alcala's testimony admitting her signature on the Acknowledgement.[2] The Acknowledgement states, "By my signature below, I acknowledge that I have received and read (or had the opportunity to read) the . . . [Agreement]." *See In re Prudential Ins.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding) (unsigned paper may be incorporated by reference in paper signed by person sought to be charged). The Agreement contains a section titled "Scope of Arbitration Agreement," providing as follows:

> This Agreement is mutual, covering all claims that Company or Claimant may have which arise from: Any injury suffered by Claimant **while in the Course and Scope of Claimant's employment with Company, including but not limited to, claims for negligence**, gross negligence, and **all claims for personal injuries**, physical impairment, disfigurement, pain and suffering, mental anguish, wrongful death, survival actions, loss of consortium and/or services, medical and hospital expenses, expense of transportation for medical treatment, expenses of drugs and medical appliances, emotional distress, exemplary or punitive damages and any other loss, detriment or claim of whatever kind and character.
> . . . .

The Agreement defines "Company" to mean entities listed in Schedule A, as well as all successors and related entities of those entities, and Schedule A lists Great Western and MPS. The record also contains an affidavit of Dawn Durett, in which

---

[2] The Plan, Agreement, and Acknowledgement are all in writing. The Agreement itself is not signed by any of the parties, though it is referenced in the Acknowledgment. However, that fact is not dispositive on our analysis of whether a valid arbitration agreement existed between the parties because "[t]he FAA contains no requirements for the form or specificity of arbitration agreements except that they be in writing; it does not even require that they be signed." *See In re Macy's Tex., Inc.*, 291 S.W.3d 418, 418 (Tex. 2009) (per curiam) (orig. proceeding).

she testified she was a Regional Human Resources Director at MPS, custodian of records for MPS, and that in June 2017, WestRock purchased all of the outstanding shares of MPS. Thus, appellant established a written agreement existing between Alcala, MPS, and related entity WestRock and that its scope encompasses "claims for negligence" and "all claims for personal injuries" like Alcala's claims for negligence and premises liability claims related to her alleged on-the-job injury.

Below in the trial court, Alcala argued the motion to compel should be denied for several reasons. First, she urged appellants failed to establish the Agreement was between themselves and Alcala because the Acknowledgement references Great Western, not MPS or WestRock. However, as discussed above, the Agreement defines "Company" to include Great Western and MPS and related entities.

In her second argument, Alacala complained the Acknowledgement was procedurally unconscionable because she does not read or write in English and therefore did not understand the English arbitration agreement.[3] Alcala's response to the motion to compel included an affidavit signed by Alcala that attested she "cannot read, understand, or speak English" and that "it was never explained to me

---

[3] The Acknowledgement states, "By my signature below, I acknowledge that I have received and read (or had the opportunity to read) the Benefits Schedule, Summary Plan Description (the "SPD") for the Employee Injury Benefit Plan, and Mutual Agreement To Arbitrate Claims, effective 08/13/2009." Alcala's challenge is thus not directed at the arbitration provision. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967).

by anyone that when I signed these documents that I was giving up my right to trial by jury." The trial court conducted two hearings on the motion to compel, the second of which was an evidentiary hearing at which Alcala testified through an interpreter that she had told her employer she could not read or understand English and relied on her employer's representation that the documents she was signing were related to "a direct deposit."

Unconscionable contracts are not enforceable under Texas law. *See In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding). Unconscionability has two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *See In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002) (orig. proceeding). By arguing the Acknowledgement was procedurally unconscionable, Alcala seeks to avoid the effect of signing it. *See Micocina, Ltd. v. Balderas-Villanueva*, No. 05-16-01507-CV, 2017 WL 4857017, at *5 (Tex. App.—Dallas Oct. 27, 2017, no pet.) (mem. op.). Appellants respond that because Alcala accepted benefits under the very same injury benefit plan that requires her to arbitrate on-the-job injury claims, she is estopped from challenging the Agreement.

The doctrine of direct benefits estoppel recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained

–6–

that other provisions of the same contract should be enforced to benefit him. *See Rachal v. Reitz*, 403 S.W.3d 840, 846 (Tex. 2013). As applied to an agreement to arbitrate, a nonparty may be compelled to arbitrate if it deliberately seeks and obtains substantial benefits from the contract itself during the performance of the agreement. *See id.* Additionally, the doctrine may apply when a non-signatory deliberately seeks and obtains direct and substantial benefits from the contract containing the arbitration clause, irrespective of whether the non-signatory's lawsuit claims are based on the contract. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005).

The record reflects Alcala received $5,116.46 under the Plan in the form of benefits paid to cover medical expenses related to the subject of her suit against appellants: her February 2016 on-the-job injury. The Plan itself provided, "there is an Arbitration Policy attached to the back of this booklet." The Agreement provided, "Payments made under [the] Plan . . . constitute consideration for this Agreement." Having obtained the benefits under the Plan, which incorporates the Agreement by reference, Alacala cannot legally or equitably object to the arbitration provision in the Agreement. *See In re Weekley Homes, L.P.*, 180 S.W.3d at 133.

In her third argument, Alcala asserted that appellants failed to establish a valid agreement existed because they did not attach to their motion a copy of the Agreement that corresponded with the Acknowledgement. Appellants' motion to compel included as attachments both English and Spanish versions of the Agreement

and Acknowledgement. The English-version of the Acknowledgment referred to the Agreement effective as of "08/13/2009," and the Spanish-version of the Acknowledgement referred to the Agreement effective as of "08/13/2007," but both Agreements stated they were effective as of "08/13/2007." Appellants' reply in support of the motion included as an attachment the Agreement effective as of "08/13/2009," which contains the arbitration clause quoted above in this opinion.[4] Accordingly, this third argument for denying appellants' motion to compel is not supported by the record. *See Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992) (orig. proceeding).

In her fourth argument of her response, Alcala argued that the TAA, not the FAA, governs, and the TAA excludes claims for personal injury, like Alcala's, unless "the agreement is signed by each party and each party's attorney," which was not established in this case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.002 (c). We note the Agreement specifically provides the FAA applies, and in any event, state-specific safeguards like section 171.002 of the TAA are preempted to the extent they conflict with the FAA's mandate of enforceability. *See In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005) (orig. proceeding) (per curiam).

---

[4] At the second hearing to the trial court, appellants confirmed they were relying on the 2009 version of the Agreement.

## CONCLUSION

We reverse the trial court's order denying arbitration and remand this case with instructions to order the parties to arbitration and stay the underlying case pending the outcome of the arbitration.

/David J. Schenck/
_____
DAVID J. SCHENCK
JUSTICE

190303F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MULTI PACKAGING SOLUTIONS
DALLAS, INC. AND WESTROCK
COMPANY, Appellants

No. 05-19-00303-CV      V.

AUDELIA ALCALA, Appellee

On Appeal from the 134th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-02574.
Opinion delivered by Justice
Schenck. Justices Whitehill and
Evans participating.

In accordance with this Court's opinion of this date, we **REVERSE** the trial court's order denying arbitration and **REMAND** this cause to the trial court with instructions to order the parties to arbitration and stay the underlying case pending outcome of the arbitration.

It is **ORDERED** that appellants MULTI PACKAGING SOLUTIONS DALLAS, INC. AND WESTROCK COMPANY recover their costs of this appeal from appellee AUDELIA ALCALA.

Judgment entered this 14th day of April, 2020.